W. R. HADEN, Respondent, v. FRANK McCOLLY, Appellant.

Kansas City Court of Appeals. November 11, 1912.

1. **NEGLIGENCE: Instructions: Roads and Highways.** In an action for damages caused by a collision on a public highway between an automobile and a vehicle drawn by horses, an instruction which told the jury that, "the law imposes no duty on the owners of vehicles on streets or highways to turn from the center of same, unless it became necessary to allow vehicles moving in the opposite direction to pass them," is erroneous because it is contrary to the provisions of section 10540, R. S. 1909.

2. ———: ———: ———. The statute requires persons driving on public highways to turn to the right on meeting another vehicle going in an opposite direction, and they are not permitted to continue in the center of the highway because in their judgment there is sufficient room for the others to pass without collision, the only exception being in favor of heavily laden wagons.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*Harris & Finley* and *D. C. Carter* for appellant.

*Arthur Bruton, E. A. Grimes* and *J. L. Stephens* for respondent.

BROADDUS, P. J.—This is an action to recover damages on account of the alleged negligence of the defendant.

It appears from the evidence that on the 31st day of August, 1911, that the Centralia Fair Association was holding a fair at Centralia, Missouri; that the plaintiff was engaged in conveying passengers to and from the grounds of said association, where said fair was being held, in a carriage drawn by two horses; and that the defendant was engaged in the same business, using for the purpose an automobile. While coming from opposite directions, the two vehicles came in collision, which resulted in the crippling of one of plaintiff's horses so severely that it had to be killed, and almost demolishing the harness it had on.

At the point where the collision occurred the street was fifty feet wide and almost level, with the exception of a slight elevation in the center and with two beaten tracks on either side of the center, eight feet apart. The street ran north and south, and the plaintiff's vehicle was going north in or near the center of the street. The plaintiff's evidence tends to show that if

defendant's vehicle had continued straight in the direction in which it was going there would have been no collision; that just before the collision another automobile was going north along side of plaintiff's vehicle; that a buggy drawn by a single horse was on the left and slightly in advance, also going north; and that another buggy passing, being unable to turn in any other direction in order to get out of the way of defendant's vehicle because of plaintiff's vehicle and the other automobile being in its way, the driver turned out of the street into a yard on the west side of the street; that just at this time defendant suddenly turned his automobile to the left toward the center of the street and struck one of plaintiff's horses in the side about a foot from the flank. At the time there was considerable dust in the street. There was evidence to the effect that after the collision, the automobile was found standing at an angle across the street with the front wheels in the center and with the rear ones toward the west. The carriage was standing slightly to the east of the center of the street.

The defendant had no signal attached to his vehicle, but had a mouth whistle. None of plaintiff's witnesses heard defendant give any kind of signal. The plaintiff's driver testified that he saw defendant's automobile coming about a block away.

One witness testified that the market value of the horse was $200. Plaintiff himself testified as to its good qualities as a livery horse, and that he would pay $200 for one equally as good to supply its place. The value of the harness was also shown.

The defendant's evidence tends to show that during several days prior to the date of the accident while the fair was in progress, the parties, in making their trips to and from the fair grounds, confined themselves to a beaten track on each side of the center elevation in the road, but on the occasion in question plaintiff was using the center, or nearly so, while defendant

was using the beaten track to the right of it; that plaintiff's team was going in a trot, and the automobile at a speed of from four to ten miles an hour; that at the time the parties were enveloped in a considerable cloud of dust, which obstructed the view, and, on account of which, he did not see plaintiff's vehicle until his machine struck one of his horses.

At the close of the evidence defendant offered a demurrer to plaintiff's case, which the court overruled.

The cause was instituted before a justice of the peace and appealed to the circuit court. The defendant filed no statement of his defense.

The theory upon which the case was tried is embodied in instruction No. 1 given by the court at the instance of plaintiff. Said instruction is as follows: "The court instructs the jury, that all vehicles, while in use, on streets and highways, have a right to use the center of such streets and highways, and the law imposes no duty on the owner or operator of vehicles on streets or highways to turn from the center of same, unless it becomes necessary to allow vehicles moving in the opposite direction to pass them, in which case the law requires such vehicles to turn to the right of the center of the street or highway; and if you find and believe from the evidence in this case, that the team and vehicle of plaintiff was, at the time of the injury, driving upon or along the center of the street or highway and that the automobile of the defendant was traveling a course on said street or highway as it approached plaintiff's team, which would allow it to pass said team without injury to either; then the driver of said team was not required to turn from the center of said street, but on the contrary had a right to proceed along the center of said street or highway; and if you further find and believe from the evidence that defendant, when about to pass plaintiff's team and vehicle, suddenly turned his automobile to the left and toward plaintiff's team and surrey, and toward the

center of said street or highway; and further find that said turning of said automobile was the direct cause of the injury complained of; then your verdict should be for the plaintiff for such damage as you may find from the evidence he has sustained by reason of the injury, not exceeding two hundred and twenty-five dollars."

The verdict and judgment were for plaintiff in the sum of $195, from which defendant appealed.

The principal contention of defendant is that under the evidence and the law, the plaintiff was not entitled to recover, and this contention is based upon several grounds. First, that plaintiff's vehicle was wrongfully and illegally being drawn along or near the center of the street.

Section 10540, R. S. 1909, governs the question. It reads as follows: "Whenever any persons traveling with any carriage, wagon or other vehicle shall meet on any turnpike road or public highway in this state, the persons so meeting shall seasonably turn their carriage, wagon or other vehicle to the right of the center of the road, so as to permit each carriage, wagon or other vehicle to pass without interfering or interrupting, under penalty of five dollars for every neglect or offense, to be recovered by the party injured. Nothing in this section shall be so construed as to prevent a heavily laden wagon, when it meets an empty wagon or vehicle, from retaining the center of the right of way or track."

The statute requires such person so using the highway to turn to the right on meeting another vehicle going in an opposite direction. He is not permitted to pursue his course because in his judgment there is sufficient room for the other to pass without coming in conflict with his own vehicle. The object of the statute is to prevent errors of judgment in that respect and a monopoly of the center of the highway by persons disposed to use it for their own advantage

and to the disadvantage of others. That people of the latter class do so use public highways is common knowledge. The exception, that heavily laden wagons may occupy the center of the highway without turning out when meeting other vehicles, we think, emphasizes the construction we have placed upon it. It is true there is no penalty imposed for a violation of the section unless it results in injury. In Beckeale v. Weiman, 12 Mo. App. 354, the section of the statute as it then existed was construed, but it contains nothing contrary to our construction of the present law. And it may with propriety be here said that, if it was true that plaintiff was so situated, as he claims, that he could not turn from his course in the center of the highway because other vehicles near prevented him from so doing, negligence is not to be imputed to him for his failure to turn to the right when meeting the vehicle of the defendant. [Beckeale v. Weiman, supra.]

If, as contended, the collision occurred solely by reason of the defendant turning his vehicle suddenly into the center of the road, then it is no defense to the defendant to say that plaintiff has no cause of action for the injury because he was occupying the center of the road. The wrongful act of the plaintiff in that respect would not excuse the wrongful act of the defendant in failing to exercise proper care to avoid the collision. One wrong does not justify another wrong. The law is repugnant to the doctrine of retaliation.

The objection that the value of the horse was not shown by competent evidence is not well taken.

The plaintiff's instruction on the measure of damages told the jury that they might award plaintiff "such damage as they might find from the evidence he has sustained by reason of the injury." The instruction is criticized on the ground that as the evidence showed that the horse had a particular value

as a livery animal, the instruction should have been directed to its value as such. In support of this idea, we are cited to Pannell v. Allen, 160 Mo. App. 714, which has no application. If error, it could not have been prejudicial to the defendant for it is more than probable that if the jury had been called upon to put a value on the horse because of his good qualities for livery purposes, the damages assessed on that account would have been greater, as the proof was that as a livery animal it was worth $200, whereas the verdict for damages to the horse and harness combined was only for $195.

And evidence that a horse is a good livery animal is not evidence of special value any more than to say, he is gentle, or possessed of any other good quality. The instruction is specific enough. If it was lacking in that respect, it was the duty of the defendant to have asked the court to make it more definite. That is now the general rule.

We think the error pointed out was misleading, and, as it put a wrong construction upon the statute on a subject of much importance, the cause is reversed and remanded. All concur.